# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | : | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CASE NO.: 23-CR-387 (TJK) |
| | : | |
| v. | : | VIOLATION: |
| | : | 18 U.S.C. § 231(a)(3) – (Civil Disorder) |
| | : | |
| **RONALD ALFRED BRYAN,** | : | 18 U.S.C. § 111(a)(1) – (Assaulting |
| | : | Resisting, or Impeding Certain Officers) |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Ronald Alfred Bryan, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. This joint session of Congress was an official proceeding as that term is used in Title 18, United States Code, Section 1512. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.  Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8.  One individual whom the FBI sought to identify through a "wanted poster" (or "BOLO," short for "be on the lookout") disseminated on the FBI's website was the defendant. On January 6, 2021, he wore dark-rimmed eyeglasses, a dark hooded sweatshirt, and black baseball cap bearing the words "Vietnam Veteran." The FBI designated him AFO-418 because he assaulted USCP officers on the Northwest Steps and inside the scaffolding. FBI investigation determined

that AFO-418 was Ronald Alfred Bryan. Bryan lives in Pollock, Louisiana. On or about January 5, 2021, he traveled from Louisiana to Washington, D.C.

9. Open-source video depicted the defendant on January 6, 2021, at approximately 1:54 p.m. as he used a wooden pallet as protection (to avoid officers' use of less-lethal munitions like pepper spray) while ascending the Northwest Steps and moving towards USCP officers who were defending a landing on those steps. Seconds later, Bryan put the pallet down near the feet of a rioter identified as Christopher Alberts. Bryan forcibly took USCP Officer S.S.'s plastic shield from him, and then charged forward, toward USCP Officer S.S. and other officers, using the shield offensively in an attempt to breach the police line. Bryan's possession and use of the shield can be seen in Figures 1 and 2. At the same time, Alberts picked up the pallet and assaulted USCP officers using the wooden pallet.



*Figure 1*



*Figure 2*

10.     After his unsuccessful effort to breach the police line on the landing near the Northwest Steps, Bryan climbed through the temporary scaffolding slightly to the south and physically assaulted USCP Officer C.C., at or around 1:57 p.m. Open-source video captured Bryan attempting to tackle USCP Officer C.C. In response, USCP Officer C.C. pushed Bryan back down the stairs and hit Bryan with a baton. Bryan then forcefully pushed Officer C.C. back up the Northwest Steps. *See* Figure 3 below.



Figure 3

11.     Open-source videos recorded later on January 6, 2021, revealed Bryan bragging about his theft of the police shield and his assaults on USCP officers. Near the Peace Circle, he explained, "we ganged up, on the left side of the steps where the white tarps were. I started cutting the tarps off" and described how he "stormed up the steps." Bryan boasted, "I stole a baton. I stole a shield. [I] knocked two of them to the ground, took six of them to get me off of them." Bryan encouraged other individuals to assault officers as well, exclaiming, "y'all go get you some!"

12.     Later, in front of the west entrance to the E. Barrett Prettyman Federal Courthouse, Bryan showed bruises on his body and continued to brag about his theft of the police shield and assaults on USCP officers. He stated, "I was one of the first ones up … I run through the front line, got a shield on the way through. When they got me down and started beating on me, I got a baton. It took about a half dozen of them to get the stuff away from me."

### Elements of the Offense

13.     The parties agree that Civil Disorder in violation of 18 U.S.C. § 231(a)(3) requires the following elements:

   a. First, the defendant knowingly committed or attempted to commit an act with the intended purpose of obstructing, impeding, or interfering with Officer S.S.

b. Second, at the time of the defendant's actual or attempted act, Officer S.S., was engaged in the lawful performance of his official duties incident to and during a civil disorder.

c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.

14. The parties agree that Assaulting, Resisting, or Impeding Certain Officers 18 U.S.C. § 111(a)(1) requires the following elements:

a. First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with Officer S.S., an officer from United States Capitol Police.

b. Second, the defendant did such acts forcibly.

c. Third, the defendant did such acts voluntarily and intentionally.

d. Fourth, Officer S.S. the person assaulted, resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of his official duties or assisting officers of the United States who were then engaged in the performance of their official duties.

e. Fifth, the defendant made physical contact with Officer S.S. or acted with the intent to commit another felony. For purposes of this element, "another felony" refers to the offense charged in Count One.

### Defendant's Acknowledgments

15. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he committed, or attempted to commit, any act to obstruct, impede, or interfere with any law enforcement officers engaged in the lawful performance

of his official duties, incident to, and during the commission of a civil disorder, and that the civil disorder obstructed, delayed, or adversely affected commerce or the performance of any federal protected function.  The defendant further admits that he assaulted USCP Officer S.S. and USCP Officer C.C., which involved physical contact and which assault occurred with the intent to commit another felony.

          Respectfully submitted,

          MATTHEW M. GRAVES
          United States Attorney
          D.C. Bar No. 481052

By:    */s/ Cytheria D. Jernigan*
       CYTHERIA D. JERNIGAN
       Assistant United States Attorney
       D.C. Bar No. 494742
       Capitol Siege Section
       Detailed to the U.S. Attorney's Office
       District of Columbia
       601 D Street, NW
       Washington, DC 20530

## DEFENDANT'S ACKNOWLEDGMENT

I, Ronald Alfred Bryan, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 5/30/2024

Ronald Alfred Bryan
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 6/17/2024

Elizabeth Mullin
Attorney for Defendant